IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


KURT TOTH,                          )
                                    )
            Plaintiff,              )
                                    )
            v.                      )      Civil Action No. 11-437
PAUL A. ROCCO, et al.,              )
                                    )
            Defendants.             )


MEMORANDUM OPINION

Mitchell, J.

            Presently before the Court is Defendants', Paul A.
Rocco's ("Rocco"), Brian Reiter's ("Reiter"), collectively, the
"police officers", Mark Presley's ("Presley"), Jim Bartholomew's
("Bartholomew"), Michael Nastock's ("Nashtock"), collectively,
the "supervisors", and South Pymatuning Township's ("Pymatuning"
or "township") motion to dismiss the amended complaint (Doc. #
21) filed by the Plaintiff, Kurt Toth ("Toth").  For the reasons
that follow, the motion will be granted in part and denied in
part.

    A.  Factual and Procedural History

            Plaintiff alleges the following facts in his complaint
which the Court accepts as true for purposes of the motion to
dismiss.  Toth, a resident of Pymatuning, was concerned about
the fiscal mismanagement of the township, which he deemed

traceable to the self-dealing of the township's supervisors. Toth is an active member a group of taxpayers that attend the township public meetings to keep abreast of the supervisors' activity. In addition, Toth has taken it upon himself to scrutinize the work performed by the supervisors and other township employees.

As a result of his monitoring, Toth determined that the time cards of the township's road crew were falsified as to the type and duration of work performed. One member of the road crew, Mark Presley, would soon become a township supervisor. On November 17, 2009, Toth notified the then-sitting supervisors that he was aware that that the employees were falsifying their time cards. Sometime thereafter the use of time cards was eliminated. When a question arose at the March 9, 2010 township meeting about the discontinued time card policy, Presley, now a supervisor, replied: "If you want to know what we're doing, follow us." Am. Compl. ¶10. At a meeting the following month, a township police sergeant stated that Toth had a right to shadow township employees as long as he did not interfere with their work.

On April 28, 2010, Toth followed a road crew, keeping at least a distance of 300 feet as instructed by the police. Shortly thereafter, on April 30, 2010, Toth received notice that he was being charged with criminal stalking of township

employees in violation of 18 Pa.C.S. § 2709. This criminal
charge was based on the following Affidavit of Probable Cause by
Police Officer Reiter:

> [Toth] on this date April 28, 2010 at approx.
> 1:00pm did park a Green in color Ford truck
> with a black Cap over the bed area at 3341
> Tamarack Drive a closed business, as Mark and
> Karen Presley both employees of South
> Pymatuningmatuning Township returned from
> there [*sic.*] lunch break. The Presley's
> observed [Toth] sitting in wait.
> The[P]resley's pulled into the Township
> building parking area to return to work.
> [Toth] remained at the closed business. Mark
> Presley then a short time later exited the
> Township building in the Township Public
> Works truck and pulled into the South
> Pymatuning Community Church parking area to
> remove equipment. Mark Presley then left the
> area to travel towards-then onto Saranat
> Drive (Sr0846). [Toth] then pulled his
> vehicle into the South Pymatuning Community
> Church Parking area located at 3400 Tamarack
> Drive semi-across from the Township Building
> and sat for several minutes. The defendant
> then left to travel North West on Tamarack
> Drive past the Township building as reported
> in a very slow manner. [Toth] has been
> verbally informed by your affiant and other
> Officers to Include Township Supervisor Mike
> Nashtock and our legal Solicitor Robert
> Tesone also Sgt Richard Christoff not to
> follow, harass, impede or put any Township
> worker in fear or emotional distress. Toth]
> has previous documented cases of harassment /
> stalking / Disorderly conduct incidents at
> South Pymatuning Township Police against the
> same employees this date as well as the
> following South Pymatuning Township
> employees/supervisor: Mike Nashtock.
> Employees: Burt Devries and LeaAnne Dumars.
> listed are the previous documented incidents.

> 09-30-2009 At the South Pymatuning Twp
> building and parking area, 11-13-09 Incident#
> 09-11-2035 at South Pymatuning Garage area,
> 01-21-2010 incident 10-01-0124 Upper Office
> area of the Township building. [Toth] during
> the incidents has verbally assaulted
> Employees of the Township and created a very
> hostile atmosphere placing the workers in
> fear of there [*sic.*] safety and creating
> great emotional distress. [Toth] continues to
> follow and stalk the Public works workers as
> they are outperforming there [*sic.*] daily
> work activities casuing [*sic.*] them to be in
> fear of [Toth's] possible actions.

Am. Compl. Ex. 1. Toth avers that supervisors Presley, Bartholomew, and Christoff specifically directed Reiter to charge him with the stalking offense.

After he received notice of the criminal charge, Toth alerted the local media to attend the township supervisors' meeting scheduled for May 11, 2010. At the meeting, Toth openly protested the charge leveled against him. The supervisors thereafter directed Reiter to charge Toth on multiple counts of disorderly conduct and harassment because of his conduct at the meeting and in alleged retaliation for his public denunciation of the stalking charge. The new disorderly conduct and harassment charges were filed on June 2, 1010 under the same docket number as the stalking charge filed on April 30, 2010.

A hearing on the criminal charges was scheduled for August 2, 2010. Prior to the hearing, the District Attorney for Mercer County informed Toth that he had the choice of pleading

no contest to any one of charges or face prosecution for all of the violations. Toth avers that he felt threatened with incarceration and was coerced by Reiter and the District Attorney to accept the plea deal. Toth pled no contest to one count of disorderly conduct and the remaining charges related to both the April and May incidents were withdrawn. Toth insisted that the plea sheet read "no contest" rather than "guilty."

On September 18, 2010, Toth was charged with criminal harassment and disorderly conduct by defendant Officer Rocco based upon an allegation that he threw gravel at another individual. Rocco stated to Toth that his "superiors" directed him to file the charges and that an affidavit from the complaining victim was sufficient to support the charges. Am Comp. ¶¶ 43, 45. Toth told Rocco that the victim held a grudge against him and, in any event, he was out of town when the crime allegedly occurred. Toth also contends that the victim was a criminal and a known drug user and that the police department was aware of this reputation for unreliability when they charged him based solely on the victim's affidavit. At the request of the District Attorney, these harassment and disorderly conduct charges were withdrawn on October 20, 2010.

On April 1 2011, Toth filed a 42 U.S.C. § 1983 civil rights action alleging First Amendment retaliation and malicious prosecution against the various defendants, in their individual

and official capacities.  After the defendants filed a motion to dismiss, Toth filed an amended complaint that included claims against an additional defendant, South Pymatuning Township, and revised the caption to read that the individual defendants were sued only in their individual capacities.[1]  In count one, Toth alleges that the supervisors participated, directed, had knowledge of, and otherwise acquiesced to the initiation of criminal proceedings against him without probable cause and for the purpose of retaliating against him for exercising his protected First Amendment right to free speech. He further alleged that the police officers acted in accordance with the supervisors' directives to arrest him without probable cause. Count two avers that these same state actors maliciously prosecuted him in an attempt to silence him from voicing his concerns about the fiscal mismanagement of the township by the self-interested supervisors.  Count three of the amended complaint repeats the first amendment retaliation charges pled in count one and avers the township is liable for misconduct of its employees acting pursuant to the policy and practice of the

---

[1]      Personal-capacity suits seek to impose personal liability upon a government official for actions taken under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165-166 (1985).

Township Board of Supervisors.  Finally, count four claims that the township is similarly liable for the wrongdoing of its employees resulting in the malicious prosecution of the plaintiff.[2]

The defendants have filed a motion to dismiss the complaint arguing that:  1) Toth's claims based upon the charges filed against him on April 30, 2010 and June 2, 2010 are barred by the Heck v. Humphrey rule; 2) probable cause existed for Toth's arrest for the gravel throwing incident; 3) the passage of time between the protected activity and the gravel throwing arrest renders plaintiff's First Amendment claim implausible; 4) the individual defendants are entitled to qualified immunity; 5) Toth has not stated a sufficient claim against the township; and, 6) the claim for punitive damages is not cognizable.

B. Standard of Review

The United States Supreme Court opinions in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007) and, more recently, in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), have shifted pleading standards from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

---

[2]   Although the caption underlying count four of the amended complaint professes to state a claim against the supervisors and officers, the Court understands this count as a claim against the township.

With the Supreme Court instruction in mind, the Court of Appeals for the Third Circuit has outlined a two-part analysis that courts should utilize when deciding a motion to dismiss for failure to state a claim. First, the factual and legal elements of a claim should be separated. In other words, while courts must accept all of the complaint's well-pleaded facts as true, they may disregard any legal conclusions. Second, courts then decide whether the facts alleged in the complaint are sufficient to demonstrate that the plaintiff has a "plausible claim for relief." Iqbal, 129 S. Ct. at 1950. That is, a complaint must do more than allege the entitlement to relief; its facts must show such an entitlement. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).

    C. Discussion

    1. Application of Heck v. Humphrey

        Toth asserts that the filing of criminal charges against him following his vocalized complaints against the management of the township violated his First Amendment rights. "[I]nstitution of criminal action to penalize the exercise of one's First Amendment rights is a deprivation cognizable under § 1983." Losch v. Borough of Parkesburg, PA, 736 F.2d 903, 907-08 (3d Cir. 1984). To establish a claim for First Amendment retaliation, a plaintiff must demonstrate that: (1) he engaged

in protected activity; (2) the government responded with retaliation; and (3) the protected activity was the cause of the retaliation. Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003). The Supreme Court has held that the absence of probable cause is essential to proving the causal link between the alleged retaliatory arrest and a plaintiff's protected speech. Hartman v. Moore*, 547 U.S. 250, (2006); see also Walker v. Clearfield County District Attorney, 413 Fed. App'x. 481, 483 (3d Cir. 2011)(absence of probable cause is a fourth element required to state a First Amendment retaliation claim).

Additionally, to prevail on his §1983 malicious prosecution claim, Toth must show that:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; 4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009)(quoting Estate of Smith*, 318 F.3d at 521). Thus, Toth must show the absence of probable cause to pursue both his First Amendment retaliation and malicious prosecution claims.

The defendants argue that Toth's § 1983 action based

upon the stalking/harassment[3] incidents must be dismissed pursuant to the Heck v. Humphrey 512 U.S. 477 (1994) rule. In Heck, the United States Supreme Court held that where a favorable outcome in a section 1983 action would implicitly call into question the validity of a conviction, the plaintiff must first "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The defendants claim that Toth's no contest plea, following a negotiation with the prosecution, established that the criminal proceedings did not terminate in his favor, thereby precluding advancement of his § 1983 claims related to those charges.

Toth responds that the holding in Basile v. Township of Smith, 752 F.Supp 2d. 643 (W.D.Pa. 2010) undercuts defendants' Heck argument. In Basile, the plaintiffs pled guilty to disorderly conduct in exchange for dismissal of eighteen other charges against them. They subsequently brought a section 1983 action against the arresting officers claiming that the arrest was without probable cause, based upon a warrant containing false information, and supported by false statements in the

_____

[3] Toth was also charged with two counts of disorderly conduct on June 2, 2010. Am Compl., Ex. 2.

affidavit of probable cause. In denying the defendants' motions to dismiss, the Court argued against a rote application of <u>Heck</u> and concluded that, on a case-by-case basis, the existence of probable cause may be rebutted if the plaintiff asserts that the conviction or guilty plea was "obtained by fraud, perjury, undue influence, or some other corrupt means." <u>Id</u>. at 655. The <u>Basile</u> Court found support to question the general rule that a guilty plea or conviction decisively establishes probable cause in <u>Mosley v. Wilson</u>, 102 F.3d 85, 91 (3d Cir. 1996) wherein the Court of Appeals for the Third Circuit analyzed the preclusive effect of a conviction that had been overturned on appeal on the issue of probable cause.[4]

    In addition to the fact that <u>Basile</u> is not binding on this Court, this matter is distinguishable. First, this Court has sufficient information surrounding the circumstances of Toth's no contest plea. Those facts demonstrate the pre-plea discussion and the reservations expressed by Toth were typical of criminal plea negotiations where some charges are dropped in exchange for the plea. The record includes the written plea colloquy wherein Toth acknowledges that his plea was knowing and voluntary and that the Toth was represented by counsel at the plea proceedings.

---

[4]    This Court questions the applicability of <u>Mosley</u>, since the subject conviction in that case was overturned.

Second, the Third Circuit has observed that the proper inquiry as to the preclusive effect of entering a plea is whether there was a favorable termination of a "proceeding," not merely a "charge" or "offense." Kossler v. Crisanti, 564 F.3d 181, 188 (3d Cir. 2009). It then concluded that a plaintiff's acquittal on some charges, when accompanied by a conviction on other charges arising from the same incident, was not a "favorable termination" of the underlying criminal action for purpose of plaintiff's subsequent malicious prosecution claim under § 1983. "'In the context of a malicious prosecution action, to determine whether a party has received a favorable termination in the underlying case, the court considers the judgment as a whole in the prior action'") (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 119 (5th ed.1984); 52 Am.Jur.2d Malicious Prosecution § 32 (Supp. 2007). Id.

In this matter, although the charges from the April stalking arrest were consolidated with those from the June disorderly conduct and harassment charges for purposes of the plea proceeding, because they arose from two different sets of facts, they are analyzed separately. In reverse chronology, the record information for the charges filed against Toth on June 2, 2010 is admittedly sparse, i.e., the criminal complaint is silent as to when the alleged offenses were committed, vague as

to the specifics of the violations, and is not accompanied by an affidavit of probable cause. However, Toth's no contest plea to one count of disorderly conduct precludes him from attacking the probable cause for the remainder of the offenses charged on June 2, 2010 as they arose out of the same conduct. In comparison, the record does include a detailed affidavit of probable cause attesting to the facts supporting filing criminal charges against Toth for criminal stalking on April 30, 2010. As to this offense, probable cause is established on the merits.

In sum, Toth chose to forgo a trial wherein he could have challenged the probable cause on any of the charges. The factual record demonstrates that probable cause existed for the April 30, 2010 stalking charge and his no contest plea to one disorderly conduct offense from the June 2, 2010 charges, forecloses him from pursing both his First Amendment retaliation and malicious prosecution claims arising from those offenses. Thus, defendants' motion to dismiss the amended complaint on the ground that Toth cannot collaterally attack his August 2, 2010 no contest plea will be granted.

2. Gravel Throwing Incident

The defendants next contend that Toth's § 1983 malicious prosecution and retaliation claims based upon the gravel throwing incident must be dismissed because the affidavit of the complaining victim provided probable cause for filing

13

charges against Toth for the summary offenses of criminal harassment and disorderly conduct. They further aver that Toth's First Amendment retaliation claim based upon the gravel throwing incident is not plausible because of the passage of time between the protected activity and the filing of the criminal charges. As noted above, Toth must show that probable cause was lacking for the gravel throwing charges to successfully advance both his malicious prosecution and his First Amendment retaliation claims.

Probable cause to arrest is present "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Merkle v. Upper Dublin School District, 211 F.3d 782, 788 (3d Cir. 2000) (citation omitted). The reasonableness prong of a probable cause determination is "drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). Generally, the probable cause question in a section 1983 damage suit is for the jury, particularly when the determination depends upon credibility conflicts. Merkle, 211 F. 3d at 788. "However, a district court may conclude 'that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual

finding' and may enter summary judgment accordingly." Id. at 788-79 (quoting Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).

Toth pled the following concerning the circumstances surrounding the gravel throwing arrest:

- Rocco was directed by the defendant supervisors to make the arrest. Am. Compl. ¶¶ 43,44.

- Rocco did not interview Toth before filing the criminal charges and stated "I have an affidavit and that is all I need." Am. Compl. ¶ 45.

- Toth informed Rocco that the victim was biased against him. Am. Compl. ¶ 46.

- Rooco knew that the complaining witness was a criminal and drug abuser. Am. Compl. ¶ 50.

According to the defendants, the facts known to Officer Rocco at the time of the arrest, i.e., that a victim accused Toth of throwing gravel at him and that the victim was a known criminal and drug user, supplied sufficient probable cause for the arrest. Toth counters that because the reliability of the complaining witness was dubious and because the arrest was ill-motivated, probable cause did not exist.

In Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) the Court of Appeals for the Third Circuit addressed whether a positive identification by the victim is sufficient by itself to

establish probable cause.  The Court stated:

> While we agree that a positive identification
> by a victim witness, without more, would
> usually be sufficient to establish probable
> cause, this qualified precept cannot be
> rendered absolute. Independent exculpatory
> evidence or substantial evidence of the
> witness's own unreliability that is known by
> the arresting officers could outweigh the
> identification such that probable cause would
> not exist. Each case must therefore be
> examined on its facts.

Id. at 790.

The sole factual basis for Toth's arrest was the affidavit of the complaining witness, thus the credibility of that witness is crucial to the probable cause inquiry.  Toth alleged that this witness was known to the arresting officer as a criminal and a drug abuser.  He also claims that Rocco told Toth that he was making the arrest at the behest of his supervisors.

At this stage of the proceeding, the facts alleged by Toth raise a question as to the existence of probable cause for his arrest for the gravel-throwing incident.  First, the affidavit by the victim is not a part of the record so its contents cannot be scrutinized; second, Officer Rocco knew the victim's criminal past; and, third, Officer Rocco told Toth that the defendant supervisors directed the arrest.  Accepting these allegations as true, the sufficiency of the probable cause for the arrest is a question properly left for a jury.  See

Montogomery v. DeSimone, PTL, 159 F.3d 120, 124 (3d Cir. 1998)
(question of probable cause is one for jury, unless, when
accepting all plaintiff's allegations as true, no reasonable
jury could find lack of probable cause).

Defendants argue that Toth's First Amendment
retaliation claim fails for the additional reason that the
protected activity, speaking out at the May 11, 2010
supervisors' meeting, was not related in time to the September
18, 2010 gravel throwing/disorderly conduct arrest.

Where the temporal proximity between the protected
activity and the adverse action is not "unusually suggestive,"
courts inquire whether "the proffered evidence, looked at as a
whole, may suffice to raise the inference. Among the kinds of
evidence that a plaintiff can proffer are intervening antagonism
or retaliatory animus." LeBoon v. Lancaster Jewish Community
Center Asssociation, 503 F.3d 217, 232 (3d Cir. 2007)(citation
and quotation marks omitted).

While the Court agrees with defendants that the four
months between the meeting incident and the gravel throwing
arrest does not raise an inference of causation, defendants
overlook the fact that Toth has alleged that he was coerced into
pleading no contest on August 2, 2010 for the charges stemming
from the May 11, 2010 meeting. At this juncture, that is
sufficient evidence of intervening antagonism to defeat the

defendants' temporal proximity argument.

### 3. Qualified Immunity

Defendants contend that Toth's civil rights claims against them must be dismissed because they are entitled to the defense of qualified immunity.

#### a. Police Officers

Qualified immunity is intended to shield government officials performing discretionary functions, including police officers, "from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). Determining whether qualified immunity applies is a two-step process: "First, the court must determine whether the facts alleged show that the defendant's conduct violated a constitutional or statutory right." *Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir. 2006). If the court finds that a defendant violated a constitutional or statutory right, then "the court must determine whether the constitutional or statutory right allegedly violated by the defendant was 'clearly established.'" *Id.* (citation omitted). If no constitutional right has been violated, the inquiry concerning qualified immunity ends. *Wright v. City of Philadelphia*, 409 F.3d 595, 600 (3d Cir. 2005).

As discussed above, Toth claimed that his arrests by Officer Reiter on April 30, 2010 and June 2, 2010 were without probable cause and violated his First Amendment and liberty rights. However, this Court has determined that Toth waived his right to pursue his section 1983 claims by virtue of his no contest plea to the June charges and because the April charge was supported by probable cause. Accordingly, Toth has failed to meet the first prong of the qualified immunity defense inquiry – that he has suffered a constitutional deprivation. For this reason, Officer Reiter is entitled to qualified immunity.

The same cannot be concluded regarding Officer Rocco. Viewing the facts of the gravel throwing incident favorably to Toth, Rocco arrested him on the basis of questionable probable cause and because the defendant supervisors directed him to file the charges. This is not, as defendants claim, similar to Mitchell v. Obenski, 134 Fed. App'x 548 (3d Cir. 2005) wherein the court granted qualified immunity to a police officer when the arrest was based upon a credible consistent account of an assault and an arrest warrant signed by a District Magistrate. Here, there is not enough record information to evaluate whether Officer Rocco had probable cause for the gravel throwing arrest. Therefore, Officer Rocco is entitled to qualified immunity only if Toth's First Amendment right to speak without retaliation and

his right to be free from the deprivation of liberty were not clearly established.

"[A] right is 'clearly established' when the contours of the right are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" McGreevy v. Stroup, 413 F.3d 359, 366 (3d Cir. 2005) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). Here, a reasonable officer would understand that the arrest of Toth with debatable probable cause and at the behest of township supervisors violated the First Amendment and resulted in a deprivation of liberty associated with a malicious prosecution. Officer Rocco, therefore, is not entitled to qualified immunity at this stage.

b. Supervisors

The defendant supervisors assert that they are entitled to qualified immunity for the same reasons applicable to the police officers. The essence of their argument is that even if they instructed the officers to arrest Toth, the criminal charges were supported by probable cause and that Toth's no contest plea to the subject charges precludes him from pursuing this civil rights action. For the same reasons underscoring the decision on the police officers' immunity, the supervisors' defense of qualified immunity is accepted as to the April and June arrests, but rejected as it relates to the gravel throwing arrest.

The supervisors request for qualified immunity is refused for the additional reason that the record does not allow for a determination of the objective reasonableness of the supervisors' actions. As the Third Circuit explained in <u>Larsen v. Senate of Commonwealth of Pennsylvania</u>, 154 F.3d 82(3d Cir. 1998):

> The qualified immunity analysis requires a determination as to whether reasonable officials could believe that their conduct was not unlawful even if it was in fact unlawful. <u>See In re City of Philadelphia Litigation</u>, 49 F.3d at 961 n. 14. In the context of a First Amendment retaliation claim, that determination turns on an inquiry into whether officials reasonably could believe that their motivations were proper even when their motivations were in fact retaliatory. Even assuming that this could be demonstrated under a certain set of facts, it is an inquiry that cannot be conducted without factual determinations as to the officials' subjective beliefs and motivations, and thus cannot properly be resolved on the face of the pleadings, but rather can be resolved only after the plaintiff has had an opportunity to adduce evidence in support of the allegations that the true motive for the conduct was retaliation rather than the legitimate reason proffered by the defendants. <u>See Sheppard</u>, 94 F.3d at 828-29.

154 F.3d at 94 (footnote omitted).

The issue of whether the supervisors' motivations were proper is also pertinent to whether Toth was subject to

malicious prosecution and requires more inquiry than can be provided in a review of the amended complaint. For these reasons, it cannot, at this stage, be determined whether the supervisors are entitled to qualified immunity for the gravel throwing incident.

    4. Township Liability

    In counts three and four of the amended complaint, Toth avers that alleged misconduct by the police officers and supervisors underlying his First Amendment retaliation and malicious prosecution charges is traceable to South Pymatuning Township's policies, practices, and/or customs. Toth contends that the defendant supervisors have "established a clear policy and/or practice wherein dissenters, such as [Toth] are harassed and subjected to erroneous and false arrests" should they vocalize their dissatisfaction with the Defendant Supervisors and Defendant Township." Am. Comp. ¶ 63. He further alleges that the "Defendant Police Officers have brandished stun guns during public meetings as a threat to Plaintiff and other citizens not to exercise their First Amendment speech rights." Id. at ¶ 64.

    To hold a government entity liable under section 1983, a plaintiff must prove that the municipality itself supported the violation of rights alleged. Monell v. Department of Social Services of New York, 436 U.S. 658, 692-95 (1978). "Thus,

Section 1983 liability attaches to a municipality only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. (1990)(quoting Monell 436 U.S.at 694). In addition, a municipality is not liable under § 1983 unless its policy or custom is the "moving force" behind the constitutional violation. Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006)(citations omitted). "A policy is made 'when a decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict.'" Swift v. McKeesport Housing Authority, 726 F.Supp.2d 559, 572 (W. D. Pa. 2010)(quoting Andrews, 895 F.2d at 1480). "A custom is a practice "so permanent and well-settled as to virtually constitute law." Id. (citations omitted).

The defendants argue that Toth has failed to allege that the township has a policy to harass and falsely arrest citizens for exercising their free speech rights because he has specifically alleged that this is the individual defendant supervisors' policy. They also argue that the claim that the township's custom or policy to arrest dissenters lacks factual support since Toth has referenced only his own criminal troubles

as evidence of the policy and/or custom. Finally, the defendants question how the gravel throwing arrest could be connected to a policy of arresting citizens in retaliation for exercise of their First Amendment rights and state that it is not plausible that a township policy or custom was the moving force behind Toth's arrest for that incident.

The Court agrees that Toth has failed to allege sufficient facts to draw a reasonable inference, as per Twombly/Iqbal, that his criminal issues resulted from a policy or custom of Pymatuning. His own arrests following his publically vocalized discontent do not suffice to show that retaliation against concerned citizens is a permanent and well-settled township practice. The motion to dismiss the amended complaint against the township will, therefore, be granted.

### 5. Punitive Damages

Punitive damages are not recoverable from a municipality or from an individual sued in his or her official capacity. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267 (1981) (holding municipality immune from punitive damages under § 1983 claim); Gregory v. Chehi, 843 F.2d 111, 119-20 (3d Cir. 1988) (punitive damages cannot be recovered from officials in their official capacities). Therefore, defendants' motion will be granted to the extent Toth requests punitive damages against the township and the individual defendants in

their official capacities.

D.  Conclusion

For the reasons stated, the defendants' motion to dismiss the amended complaint (Doc. # 21) will be granted in part and denied in part.  The motion is denied as to the section 1983 claims arising from the gravel throwing incident and Officer Rocco's and the supervisors' asserted qualified immunity from litigation arising from that incident.  The motion to dismiss is granted as to the section 1983 claims arising for the April and June arrests, the qualified immunity defenses of the supervisors and Officer Reiter related to those arrests, the allegations against South Pymatuning Township, and the request for punitive damages against the Township and against the defendants in their official capacities.

An appropriate order follows.


Dated: November 23, 2011

                                        s/Robert C. Mitchell
                                        Robert C. Mitchell
                                        U.S. Magistrate Judge